# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., <br><br> **Plaintiff,** <br><br> v. <br><br> MICHAEL BRIAN BENSON, BENSON INTEGRATED MARKETING SOLUTIONS, INC., HAKEEM O. DISU, DAVID SMITH, and THE VANGUARD GROUP, INC., <br><br> **Defendants.** | 1:17-cv-51-WSD |

## OPINION AND ORDER

This matter is before the Court on Crossclaim Plaintiff Benson Integrated Marketing Solutions, Inc. ("Benson IMS") Motion for Default Judgment [19] against Defendant and Crossclaim Defendant Hakeem O. Disu ("Disu").

## I.  BACKGROUND

On January 4, 2017, Bank of America, N.A. ("Bank of America") filed its Complaint in Interpleader pursuant to 28 U.S.C. § 1335 (the "Complaint") to determine the proper ownership, distribution of, and Interpleader-Defendants' entitlement to, assets held by Bank of America in an account (the "Account") [1]. The Interpleader Defendants are (1) Disu, (2) Benson IMS, (3) Michael Brian

Benson ("Benson"), (4) David Smith and (5) The Vanguard Group, Inc. The Interpleader Defendants assert conflicting claims to the Account funds.

On February 2, 2017, Benson and Benson IMS filed their Answer to Complaint, Claim to the Interpled Funds, and Cross-Claim [9] (the "Answer and Crossclaim"). Benson and Benson IMS allege that, on July 11, 2016, Disu or a person associated with him sent an email that was made to appear as if it originated from Benson's email account. ([9] ¶ 2). Benson is the CEO of Benson IMS. The email purporting to have been sent by Benson was sent to Melissa Rains, the accounts payable supervisor at Benson IMS. ([9] ¶ 2). The email directed Ms. Rain to wire $37,864.00 of Benson IMS funds to an account at Chase Bank in the name of one Kristy Lee Schott. The funds were supposed to pay an invoice, which was determined to be fraudulent. (Id.).

Benson IMS alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d) (Counts 1 and 2); violation of the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A § 16-14-4(b)-(c) (Counts 3 and 4); fraud, conspiracy to commit fraud, and aiding and abetting fraud (Count 5); unjust enrichment (Count 6); attorney's fees and costs under O.C.G.A. § 13-6-11 and 18 U.S.C. § 1964 (Count 7); and punitive and

treble damages pursuant to O.C.G.A. § 51-12-5.1 and 18 U.S.C. § 1964(c) (Count 8). ([9]).

On February 3, 2017, Benson and Benson IMS's Answer and Crossclaim was served on Diso by mail [12] at the address Disu specified in his Waiver of Service [11]. Disu's answer or other responsive pleading was required to be filed by February 27, 2017. An answer or other responsive pleading was not filed by the required filing date.

On March 17, 2017, Bank of America requested the Clerk of Court to enter default against Disu for failure to plead or otherwise defend this action [17]. Default was entered against Disu on April 3, 2017.

On May 1, 2017, Benson and Benson IMS filed their Motion for Default Judgment against Disu [19] seeking entry of judgment in the amount of $27,885.45. On May 17, 2017, Benson IMS filed its Notice of Filing, attaching a May 12, 2017, certified mail receipt showing the Motion for Default Judgment was served on Disu. ([22]). The certified mail receipt was signed by Disu. ([22.1]).

**II.  DISCUSSION**

    A.    <u>Legal Standard</u>

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered against defaulting defendants as follows:

(1) ***By the Clerk***. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) ***By the Court***. In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:
(A) conduct an accounting;
(B) determine the amount of damages;
(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

Fed. R. Civ. P. 55(b).

"[T]here is a strong policy of determining cases on their merits . . . . [Courts] therefore view defaults with disfavor." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "The entry of a default judgment is committed to the discretion of the district court." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)).

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278

(11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988). If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

    B.    Analysis

        1.    Alleged Violations of the RICO Act and the Georgia RICO Act

Benson IMS's claim and crossclaim allege facts to support a plausible claim against Disu for state and federal RICO violations, including predicate acts of mail fraud, money laundering, and theft by deception. The Answer and Crossclaim also sufficiently allege a "pattern of racketeering activity" under 18 U.S.C. § 1962(c), and conspiracy to engage in racketeering activity in violation of 18 U.S.C. § 1962(d). The Answer and Crossclaim allege that Disu and his co-conspirators used the United States mails and wire facilities to cause funds to be fraudulently

5

transferred, on or about July 11, 2016, from a Benson IMS account to one belonging to Kristy Lee Schott, then causing the transfer of these funds to Disu's account, on or about July 12, 2016, and on or about July 13, 2016.

2. Judgment Amount

Benson IMS's original claim totaled $37,864, the amount Disu fraudulently caused to be wired from Benson IMS to the Schott account. Benson IMS recovered from Chase Bank $13,511.05 of the amount lost. ([19.2]). Benson IMS's remaining loss amount is $24,352.95.

The Court may grant default judgment and award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985); United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979). "While a party in default admits the well-pleaded allegations of the complaint against it, a plaintiff cannot satisfy the certainty amount by simply requesting a specific amount. He must also establish that the amount is reasonable under the circumstances." Elektra Entm't Grp., Inc. v. Jensen, No. 1:07-CV-0054-JOF, 2007 WL 2376301, at *2 (N.D. Ga. 2007) (internal quotation omitted); see also Adolph Coors, 777 F.2d at 1544 ("Damages may be awarded only if the record adequately reflects the basis for award."). The

6

Court is obligated to assure (i) there is a proper basis for the damage award it enters, and (ii) that damages are not awarded solely as the result of an unrepresented defendant's failure to respond. Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1265 (11th Cir. 2003).

Plaintiff's supporting documents adequately support its claimed damages, that the damages are capable of mathematical calculation, and that the damages are reasonable. There is an adequate factual basis to support the original claim amount of $37,864—the amount that Disu fraudulently caused to be wired from the Benson IMS account. Benson IMS appropriately offset its claimed damages by the amount that it was able to recover from Chase Bank, leaving a remaining loss amount of $24,352.95.

Benson IMS next claims attorney's fees in the amount of $3,352.50. Benson IMS relies on the affidavit of Mark D. Lefkow [19.2] to support its attorney's fees claim. The federal and Georgia RICO statutes authorize the recovery of attorney's fees. See 18 U.S.C. § 1964(c) and O.C.G.A. § 16-14-6(c). The Court has reviewed the rates for the attorneys and finds them to be reasonable for the Atlanta market for legal services. Benson IMS is entitled to an award of attorney's fees in the amount of $3,352.50.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Benson Integrated Marketing Solutions, Inc.'s Motion for Default Judgment [19] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Benson IMS in the following amounts: (1) damages in the amount of $24,352.95; and (2) attorney's fees in the amount of $3,352.50, for a total damage award of $27,705.45.

**SO ORDERED** this 23rd day of January, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE